SKINNER MANUFACTURING COMPANY, A CORPORATION UNDER THE LAWS OF THE STATE OF ILLINOIS, *Plaintiff in Error,* v. E. E. DOUVILLE, *Defendant in Error.*

1. Where evidence has been admitted without objection show-

ing activity on the part of a real estate broker in effecting a sale, in an action for brokerage commissions, the court may refuse to strike merely cumulative testimony along the same line.

2.  The court should strike upon motion seasonably made, hearsay testimony that will likely be damaging in its effect.

3.  The mere fact that a motion to strike is resorted to rather than an objection to the question is not necessarily fatal; and where the bill of exceptions does not disclose the question calling forth the illegal testimony and otherwise shows that the motion was not overruled because of speculative delay, the refusal to strike constitutes error.

4.  The president of a private corporation may be presumed to have authority to employ agents to negotiate the sale of property owned by it.

This case was decided by Division A.

Writ of Error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Manuel* and *Reeves,* for plaintiff in error.

*William C. Fitts,* for defendant in error.

COCKRELL, J.—The Skinner Manufacturing Company was sued for commissions by a real estate broker for procuring a purchaser for a large tract of land. The plaintiff recovered judgment in the sum of twelve thousand five hundred dollars together with interest and costs.

The chief points of controversy at the trial and here arose over the issues as to the employment of the broker

and as to whether he was the procuring cause of the
sale.     Upon each of these propositions the evidence is
very conflicting and it was especially important that no
improper evidence be admitted which might easily throw
the balance of the scale either way.     Some of the testi-
mony tending merely to show activity upon the part of
the broker and his agents the court refused to strike be-
cause much testimony along the same line had been ad-
mitted without objection and he could see no harmful
results in permitting this particular evidence to remain
and we see no reversible error in this ruling, but the
same cannot be said as to the testimony of Ray Dou-
ville, an agent and nephew of the plaintiff, that John R.
Saunders told him before the sale that he knew the Dou-
villes had by their efforts helped the sale along.     This
hearsay statement of an opinion alleged to have been
expressed by an outsider who had no authority to repre-
sent the Skinner Manufacturing Company and out of
the hearing of any one with authority so to represent
the company cannot be proper testimony.     It would en-
able the party to do indirectly what the law would not
permit to be done directly, that is to impeach the evi-
dence of Mr. Saunders when placed on the stand by the
defendant, driven by the necessity of the case, to deny
that he had made any such statement.     If by any stretch
of the rules of evidence, the testimony of Saunders along
this line, had been admissible and he had been called by
the plaintiff as his witness, his denial of such a state-
ment would have ended the matter, as no impeachment
would have been permitted.     Adams v. State, 34 Fla.
185, 15 South. Rep. 905.     It seems clear to us that the
refusal of the court to strike this testimony placed in
possession of the plaintiff an argument that might well
overcome the arguments of the defendant which were
confined to legitimate evidence only.

It is urged, however, that the motion to strike the testimony came too late and that the defendant should have objected to the question. The distinction has been frequently recognized by this court, but it has not universal application here or elsewhere; it is based largely upon the theory that a party should not be permitted to speculate upon what the witness may say and withhold the objection in the hope that the improper question may result in evidence beneficial to himself. Several reasons suggest themselves upon this record why the strict rule should not apply. The same testimony was sought unsuccessfully to be elicited from a previous witness and the defendant then objected. The bill of exceptions presents to us the evidence in a narrative form and the question eliciting this improper testimony does not appear so that we can see that it was likely to call for the answer. Again in another part of the same bill the court refuses to strike the testimony because the motion was made too late and no like reason is given for the refusal to strike this. The testimony should have been stricken.

It is argued that the president of the corporation was not shown to have the power to make a contract for the sale of the property and therefore no authority to make a contract for commissions. Any unusual restrictions in the charter powers of the corporations are within its peculiar knowledge rather than in the knowledge of the other party and were therefore defensive matter. No authority has been cited to us denying the power of a president of a private corporation to enter into negotiations looking to a sale of property owned by it, and as incidental thereto procuring agencies to make the negotiations effective. So far as this record makes known to us it would appear that the president treated the corporation as his individ-

ual property and it is certain that very shortly after this "*casus belli*" arose the property was actually sold.

We find no reversible error in the charges, though they may be subject to some verbal criticisms heaped upon them. Upon the whole they submitted the case fairly and correctly to the jury.

For the error pointed out above the judgment is reversed and a new trial awarded.

SHACKLEFORD, C. J., and WHITFIELD, J., concur;

TAYLOR, HOCKER, and PARKHILL, JJ., concur in the opinion.