H. R. COOKE, APPELLANT, *v.* GEORGE GOVE, AS
ADMINISTRATOR OF THE ESTATE OF F. W. HOL-
BERT, DECEASED, RESPONDENT.

No. 3325

June 5, 1941.                                    114 P.(2d) 87.

*J. A. Langwith,* of Winnemucca, and *H. R. Cooke,* of Reno, in pro. per., for Appellant.

*Thomas J. Salter,* of Winnemucca, and *Anthony M. Turano,* of Reno, for Respondent.

## OPINION

By the Court, TABER, J.:

Between April 8, 1933, and December 16, 1937, appellant (plaintiff), an attorney residing and practicing at Reno, in Washoe County, performed legal services for F. W. Holbert, of Humboldt County, at the latter's special instance and request. The services consisted in preparing for and acting as Holbert's attorney at the trial of the case of Stock v. Holbert, an action to quiet title growing out of Holbert's alleged right to redeem his Humboldt County ranching property, which had been sold for nonpayment of taxes. Judgment was given in favor of Holbert, who recovered the property after paying $6,657.26 for past-due taxes, interest, and penalties.

Holbert died December 16, 1937, and defendant was appointed and qualified as administrator of his estate. Plaintiff filed a claim against the estate for $5,994.60, being $119.60 for expenses and disbursements, and $6,025 for attorney's fees, less $150 paid before Mr. Holbert's death. Following the itemized list of legal services, expenses, and disbursements, a notation was appended to the claim reading, in part, as follows: "And as Holbert represented throughout (and which claimant believed) that if he lost the ranch, he would have absolutely nothing left, the employment as to compensation was essentially one contingent upon saving the ranch. There was no agreement as to amount of attorney's fees, or how to be paid,—the subject was not even mentioned. Claimant's own idea was to save the ranch for Mr. Holbert if possible, and if successful, claimant felt Holbert

would be fair as to compensation, just as he always had been in a number of suits, etc., over a period of twelve to fifteen years previous.  If unsuccessful, claimant did not, for the reasons above, expect to receive any compensation."

The claim was allowed by the administrator in the sum of $2,119.60, being $119.60 for expenses and disbursements and $2,000 for attorney's fees; it was rejected as to the balance.  Plaintiff (appellant) then commenced an action against defendant (respondent), praying judgment in the amount of his claim, to wit, $5,994.60.  In his answer, defendant admitted that plaintiff performed legal services for Holbert between the dates alleged in the complaint, but denied that plaintiff's services were of the reasonable value of more than $1,500, of which $150 had been paid before Mr. Holbert's death.  The case was tried by the court, without a jury, and judgment awarded to plaintiff in the sum of $2,619.60, being expenses and disbursements in the sum of $119.60 and attorney's fee in the sum of $2,650, less $150 paid as aforesaid.  From that judgment plaintiff has taken this appeal.

The evidence offered and admitted by and on behalf of plaintiff consisted chiefly of the file in the Stock v. Holbert case (about 350 typewritten pages), nearly 50 letters and postals from Mr. Holbert to plaintiff, and the depositions of two Reno attorneys who testified concerning the value of plaintiff's services.

The main question in this case arises from appellant's contention that the trial court erred 'in refusing to award compensation to plaintiff on the basis that such compensation was contingent upon recovering the ranch property.  In this connection we refer, without repeating it, to the statement made by plaintiff in his claim filed against the Holbert estate.  In addition to this, the attorney-general of Nevada testified that Mr. Holbert, in the presence of plaintiff and himself, stated that the ranch property involved in the tax matter was the only

property he owned and that unless he got the property back he would be "on the county." As a matter of fact Holbert, at the time of his death and for some time prior thereto, had between nine and ten thousand dollars in addition to the ranch property. At the trial of this case in the lower court plaintiff informed the court that he learned of this at Mr. Holbert's funeral, after all his services had been performed. In support of his representation to the court that up to the time of the funeral be believed that Holbert had no other assets besides the ranching property, plaintiff points to the admitted fact that he advanced costs, expenses, etc., for Holbert in the suit, aggregating $119.60.

■ The trial court's holding was that even if plaintiff believed his remuneration dependent on the success of the Stock litigation, such belief was not entitled to any consideration in determining the amount of the fee. The record shows, and it is undisputed, that nothing whatever was said, either by Holbert or plaintiff, about the compensation to be paid the latter for his services. It is clear that there was no contract for a contingent fee. Ellis v. Woodburn, 89 Cal. 129, 131, 26 P. 963. Plaintiff, therefore, was entitled to recover only the reasonable value of his services. Shackleford v. Arkansas Baptist College, 181 Ark. 363, 26 S. W. (2d) 124.

Appellant admits that his cause of action is based upon the reasonable value of his services; but it is his contention that in fixing such value the trial court, contrary to law, refused to consider, along with other circumstances, the fact that his only hope of remuneration depended upon the success of his efforts in recovering the ranching premises for Mr. Holbert. He argues that it is the fact of contingency which should control, rather than the precise method of its creation, or the presence or absence of any agreement for a contingent fee; and that the fact of contingency is as well established where the attorney knows that his client is wholly without means to pay him except from the proceeds of the litigation, as where there is an express contract that the fee

shall be contingent. Appellant cites Epp v. Hinton, 102 Kan. 435, 170 P. 987. In that case no agreement was made as to the amount of the fee, but there was an agreement that no compensation was to be paid except on the contingency of the success of the litigation.

The refusal of the district court to consider appellant's belief that any remuneration would depend upon the success of the litigation was, in the opinion of this court, correct. To hold otherwise would in effect be adding a provision to the contract of employment which the parties themselves, both competent to contract, and between whom the relation of attorney and client had existed for some twelve or fifteen years, did not see fit to incorporate in it. This, we think, the court cannot do. Crumlish's Adm'r. v. Shenandoah Valley R. Co., 40 W. Va. 627, 22 S. E. 90; 7 C. J. S., Attorney and Client, sec 186, p. 1063, note 40. The reasonable value of the services is not augmented by the fact that they were to be performed gratuitously if not successful. In re Duffill's Estate, 188 Cal. 536, 206 P. 42; Walbridge v. Barrett, 118 Mich. 433, 76 N. W. 973. In Robbins v. Harvey, 5 Conn. 335, plaintiff attorney, without any agreement as to the amount of compensation which he should receive, undertook, at the request of client defendant, to investigate her claim, with no other prospect of remuneration for his services than what he might receive from the estate expected to be recovered. The supreme court held that these facts had no bearing on the question as to the worth of the service rendered, and that the value of the services could not be affected by the poverty of the defendant.

Appellant places much reliance upon three bankruptcy cases, In re Osofsky, D. C., 50 F. (2d) 925, In re Barceloux, D. C., 9 F. Supp. 146, and in re Barceloux, 9 Cir., 74 F. (2d) 288, 289. In the Osofsky case [50 F. (2d) 927], Judge Woolsey, after mentioning six elements properly to be considered when the fees of an attorney have not been agreed on beforehand, went on to say: "In bankruptcy cases, however, there seems to me to be

another element which has to be considered. That is the fact that in bankruptcy very often futile quests for assets have to be made. Many times, however much ingenuity and time attorneys may expend, they may not be able to get anything for the estate by their efforts. It is then a question, as in salvage at sea, of no cure, no pay. When the efforts of attorneys cause a material increase in the bankruptcy estate, or, as here, create it, they should be well rewarded; otherwise there will not be any incentive to attorneys to put forth their best efforts in cases which appear unpromising." It thus appears that a special rule now applies in bankruptcy cases, and that it was followed in the two Barceloux cases, supra.

Appellant takes the position that he saved the ranching properties for Mr. Holbert, and that the trial court should, therefore, have fixed a larger fee than $2,650 on the same theory that the courts in the bankruptcy cases made extra allowances because the attorneys, through special efforts, succeeded in materially and substantially increasing the assets of the bankruptcy estates. Briefly, the situation in the case of Stock v. Holbert was this: Holbert having failed to pay taxes in 1932, the property was conveyed by tax deed to the county treasurer and ex officio tax collector as trustee; thereafter, and before the property was sold at tax sale, Holbert offered to pay all the delinquent taxes, together with penalties, interest and costs, in an attempt to comply with the 1933 act for the compromise and settlement of claims for delinquent taxes. Stats. of Nevada 1933, chap. 171, p. 235. He laid the facts and his offer before the county commissioners, district attorney, and attorney-general and the offer would have been accepted had not Stock protested and threatened litigation. By reason of his hostile intervention, however, the district attorney and county commissioners refused to accept the offer, and the property was sold at tax sale to Stock. Holbert refused to give up possession, whereupon Stock opened the gates, ran his livestock upon the

property, and finally brought suit to quiet title, recover possession, and for damages. The court held that Holbert's offer should have been accepted, and he was awarded the property upon payment of the delinquent taxes, penalties, interest and costs.

■ Said case of Stock v. Holbert, in which appellant performed the services for which compensation is here sought on a quantum meruit, does not, in our opinion, belong in the same category as those cases where, through the efforts of the attorney, the estate has been created, or its assets materially or substantially increased; nor do we think that the salvage theory is applicable in such a case. Irwin v. Swinney, D. C. 45 F.(2d) 890, 896. And see In re Owl Drug Co., D. C. 16 F. Supp. 139, 142, 143.

■ The record in the case at bar shows affirmatively that the trial court determined the reasonable value of plaintiff's services "from all the facts and circumstances in evidence" in the Stock case; that said court took into consideration "the work, thought and skill contributed by plaintiff to the success of defendant's contention" in that case; and that all the elements or factors enumerated on page 1081 of 7 C. J. S., Attorney and Client, sec. 191, likewise received the court's consideration.

Appellant assigns as error the ruling of the trial court excluding from evidence certain carbon copies of letters written by plaintiff to Holbert, and further contends that said court practically disregarded the testimony of the expert witnesses. This court does not feel called on to discuss these matters, for the reason that in appellant's closing argument, while urging his contention that the uncertainty of his remuneration should have been weighed by the trial court and given consideration in fixing the amount of the fee, he said: "And that is why I complain of Judge Hawkins' decision. If this had been an ordinary case and Holbert had said: 'I will pay you cash. I have the cash to pay it. Send in your bill,' $2,500.00 may not have been out of the way." Coming from appellent, this court regards said

statement tantamount to an admission on his part that the compensation fixed by the district court was reasonable unless he was entitled to have it determined on a contingent basis. If we were of the opinion that the fee should be fixed on such basis, it would then be proper to consider the other assignments of error.

Judgment affirmed.